IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-01594-PAB-KMT

MICHAEL GREEN, on behalf of himself and all similarly situated persons,

      Plaintiff,

v.

FISHBONE SAFETY SOLUTIONS, LTD., a Texas limited partnership,
WILLIAM S. CAIN,
BSC INTEREST, LLC, a Texas limited liability company, and
NOBLE ENERGY, INC., a Delaware corporation,

      Defendants.

---

## ORDER

---

This matter is before the Court on Plaintiff's Motion for Approval of *Hoffmann-La Roche* Notice [Docket No. 62], Defendant Fishbone Safety Solutions, Ltd.'s Motion to Compel Arbitration as to Charles Young [Docket No. 73], Defendants William S. Cain and BSC Interest, LLC's Conditional Motion to Compel Arbitration as to Michael Green and Charles Young [Docket No. 83], and plaintiff's Motion to Reconsider, or to Certify to the Colorado Supreme Court, or to Certify for Interlocutory Appeal [Docket No. 87]. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## I.  BACKGROUND

This case arises out of plaintiff Michael Green's employment as a safety advisor for defendant Fishbone Safety Solutions, Ltd., a company that "provides safety inspection services to oil companies . . . in various states."  Docket No. 6 at 3, ¶ 10.

Plaintiff[1] alleges that defendants Fishbone Safety Solutions, Ltd. ("Fishbone"), William S. Cain ("Cain"), BSC Interest, LLC ("BSC"), and Noble Energy, Inc. ("Noble") violated the Fair Labor Standards Act ("FLSA") and state labor laws by failing to pay him and other similarly situated individuals overtime. *Id.* at 7-10. Plaintiff seeks to hold defendants jointly and severally liable on the basis that (1) Cain and BSC "own and operate Fishbone Safety Solutions" and (2) Noble "contracted with Fishbone to provide Safety Advisor services." *Id.* at 2-3, ¶ 7.

Plaintiff filed his collective and class action complaint on June 22, 2016, Docket No. 1, and his first amended complaint on August 5, 2016. Docket No. 6. On December 9, 2016, Fishbone and Noble moved to compel arbitration. Docket No. 50.[2] On January 9, 2017, Charles Young filed a notice of consent to join the action. Docket No. 58. Plaintiff subsequently moved for conditional collective action certification and *Hoffman-La Roche* notice to a class of "all current and former workers who performed safety advisor services for Defendant at any time from June 22, 2013 to present." Docket No. 62 at 5. On July 18, 2017, Fishbone filed a motion to compel arbitration as to Young. Docket No. 73.

The Court granted Fishbone's motion to compel as to Green on September 7, 2017. Docket No. 79. On September 11, 2017, BSC and Cain filed a motion to compel

---

[1]"Plaintiff" will be used throughout this order to refer to Michael Green, the named plaintiff in this lawsuit.

[2]Defendants also moved to compel arbitration of claims asserted by opt-in plaintiffs Mario Perez, Jr. and Charles Deville, who joined the lawsuit on November 10, 2016. *See* Docket No. 50; Docket No. 42 (notice of consent filings). Mr. Perez and Mr. Deville have since withdrawn their consent and are no longer plaintiffs in this lawsuit. Docket Nos. 55, 81.

arbitration as to Green and Young. Docket No. 83. BSC was dismissed from the lawsuit on September 12, 2017, Docket No. 84, but the motion to compel, as asserted by Cain, remains pending. On October 15, 2017, plaintiff filed a motion requesting that the Court reconsider its September 7, 2017 order granting Fishbone and Noble's motion to compel. Docket No. 87. All of the pending motions are fully briefed and ripe for disposition.

## II. ANALYSIS

The Court first considers plaintiff's motion for reconsideration and then turns to defendants' motions to compel and plaintiff's motion for conditional certification.

### A. Motion for Reconsideration

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Hatfield v. Bd. of County Comm'rs for Converse County*, 52 F.3d 858, 861 (10th Cir. 1995). Instead, motions for reconsideration fall within a court's plenary power to revisit and amend interlocutory orders as justice requires. *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp.*, 313 F.2d at 92. However, in order to avoid the inefficiency which would attend the repeated re-adjudication of interlocutory orders, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders. *See, e.g., Montano v. Chao*, No. 07-cv-00735-EWN-KMT, 2008 WL 4427087, at *5-6 (D. Colo. Sept. 28, 2008) (applying Rule 60(b) analysis to the reconsideration of interlocutory order); *United Fire & Cas. Co. v. McCrerey & Roberts Constr. Co.*, No. 06-cv-00037-WYD-CBS, 2007 WL 1306484, at

*1-2 (D. Colo. May 3, 2007) (applying Rule 59(e) standard to the reconsideration of the duty-to-defend order).  Regardless of the analysis applied, the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error.  Motions to reconsider are generally an inappropriate vehicle to advance "new arguments, or supporting facts which were available at the time of the original motion."  *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

Plaintiff seeks reconsideration of the Court's order compelling arbitration on two grounds: (1) the Court clearly erred in finding that the unenforceable terms in the parties' arbitration agreement were severable from the agreement; and (2) the Court clearly erred in holding that plaintiff was equitably estopped from litigating his claims against Noble in court.  Docket No. 87 at 3-8.  As an alternative to reconsideration, plaintiff requests that the Court certify certain questions of law to the Colorado Supreme Court or allow plaintiff to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  *Id.* at 8-12.

### 1. Severability

In the earlier order, this Court held that the provisions in plaintiff's arbitration agreement requiring him to (1) make a request for arbitration within one year of the challenged employment incident and (2) bear the costs of his legal representation were unenforceable.  Docket No. 79 at 7, 9.  Nevertheless, the Court concluded that the provisions could be severed from the arbitration agreement because they "[did] not affect the primary purpose or object of the agreement, which [was] to submit employment disputes to arbitration."  *Id.* at 11.  Plaintiff challenges this determination on

4

two grounds.  First, plaintiff argues that the Court's conclusion flows from an "incorrect premise" that it was plaintiff's burden to prove that the unenforceable terms were not severable.  Docket No. 87 at 2-3.  Second, plaintiff contends that the Court's ultimate holding on severability constituted clear error.  *Id.* at 3-4.

In support of his first argument, plaintiff asserts that the Court improperly imported the Federal Arbitration Act's policy favoring arbitration into its analysis of a state law issue by making it plaintiff's burden to show that the parties did not intend to allow severance of the unenforceable provisions.  *Id.* at 2.  However, plaintiff does not cite any Colorado cases addressing which party bears the burden of demonstrating severability when the unenforceable terms are contained within an arbitration agreement governed by the FAA.  *See CapitalValue Advisors, LLC v. K2d, Inc.*, 321 P.3d 602, 605-608 (Colo. App. 2013) (applying severability analysis to performance terms of debt financing agreement); *John v. United Advert., Inc.*, 439 P.2d 53, 54-56 (Colo. 1968) (applying severability analysis to performance terms in contract governing construction, installation, and maintenance of outdoor display signs); *see also Fuller v. Pep Boys – Manny, Moe & Jack of Delaware, Inc.*, 88 F. Supp. 2d 1158, 1162 (D. Colo. 2000) (noting, in analysis of whether unenforceable term was severable from arbitration agreement, that "[f]ederal case law and statutory law clearly creates a presumption in favor of arbitrability" and thus the court "must resolve all doubts in favor of arbitration").

Even if plaintiff is correct that he did not bear the burden of demonstrating the parties' intent not to allow severance, he has failed to demonstrate that the Court clearly erred in determining that the unenforceable provisions could be severed from

the parties' arbitration agreement. It is true, as plaintiff points out, that a number of

courts in this circuit have relied on the absence of a savings clause to hold that

unenforceable terms were not severable from an arbitration agreement. *See, e.g.*,

*Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1375 (D. Colo. 2014), *aff'd*, 811 F.3d 371

(10th Cir. 2016); *Perez v. Hosp. Ventures-Denver, LLC*, 245 F. Supp. 2d 1172, 1174 (D.

Colo. 2003). As stated in this Court's prior order, however, the courts in those cases

did not rely on Colorado law or analyze the parties' intent regarding severability.[3] Under

Colorado law, "[t]he absence of a severability clause does not conclusively establish

that the parties did not intend that the Agreement be severable." *CapitalValue*

*Advisors, LLC*, 321 P.3d at 607. Plaintiff acknowledges that "there may be a narrow

category of cases where a contract is divisible even in the absence of a severability

provision." Docket No. 87 at 4. However, he argues that such cases involve other

indicia of the parties' intent to allow severance, such as the existence of "multiple

standalone promises each with separate consideration" in the contract at issue. *Id.*

(citing *CapitalValue Advisors*, 321 P.3d at 607-08). But plaintiff cites no authority for

the proposition that the absence of a severability provision is determinative in cases

where the contract does not contain multiple standalone promises. Moreover, even if

plaintiff is correct that the unenforceable provisions in this case "would not be cohesive

bilateral agreements on their own," Docket No. 87 at 4, he does not challenge the

---

[3]As plaintiff argues, whether an unenforceable provision is severable from an
arbitration agreement is a matter of state, not federal, law. *See* Docket No. 87 at 3;
*Kepas v. eBay*, 412 F. App'x 40, 49-50 (10th Cir. 2010) (unpublished) (applying
California law to determine whether objectionable term in arbitration agreement was
severable).

Court's determination that those provisions are collateral to "the primary purpose or object of the agreement, which is to submit employment disputes to arbitration." Docket No. 79 at 11; *see S. Wash. Assocs. v. Flanagan*, 859 P.2d 217, 220 (Colo. App. 1992) (rejecting argument that agreement to submit issue to arbitration was invalid due to invalidity of portion of agreement governing judicial review "where that portion of the arbitration agreement concerning the standard of appellate review [] [did] not . . . affect the primary purpose or *object* of the agreement, which was, to submit the issue of the deficiency to arbitration."); *cf. Kepas*, 412 F. App'x at 50 (holding that unenforceable provision governing arbitration costs could be severed from arbitration agreement because provision was collateral to agreement's primary purpose of "provid[ing] a mechanism to resolve disputes" (internal quotation marks omitted)).

Plaintiff requests, at a minimum, that the Court "hold an evidentiary hearing as to the parties' intent." Docket No. 87 at 5. But plaintiff has never before requested an evidentiary hearing on the issue, and a motion for reconsideration is generally an inappropriate vehicle for raising new arguments "available at the time of the original motion." *Servants of the Paraclete*, 204 F.3d at 1012.

The standard for reconsideration requires plaintiff to show that the Court clearly erred in its initial ruling. Plaintiff has failed to make this showing. In requesting that this Court certify questions to the Colorado Supreme Court, plaintiff admits that "Colorado courts have yet to speak finally on the legal principles at issue here." Docket No. 87 at 8. This acknowledgment alone weighs against a finding of clear error. Accordingly, plaintiff's motion for reconsideration is denied as to the issue of severance.

## 2. Equitable Estoppel

Plaintiff also argues that the Court clearly erred in holding that plaintiff is equitably estopped from avoiding arbitration of his claims against Noble. Docket No. 87 at 5. In reaching its conclusion, this Court relied on *Meister v. Stout*, 353 P.3d 916, 918 (Colo. App. 2015), in which the Colorado Court of Appeals held that a "signatory to an agreement containing an arbitration clause may be equitably estopped from avoiding arbitration when he sues a nonsignatory on claims that (1) presume the existence of that agreement or (2) allege interconnected and concerted misconduct between the nonsignatory and one or more of the signatories related to that agreement." *See* Docket No. 79 at 13. This Court determined that the latter scenario applied in this case because "plaintiff's claims against Noble are intertwined [] with plaintiff's contractual relationship with Fishbone, which includes the arbitration agreement." *Id.* at 14.

Plaintiff argues that the Court's application of *Meister* was incorrect. According to plaintiff, this case does not fall within the circumstances described in *Meister* because plaintiff "does not rely on the terms of a written agreement containing an arbitration provision" to assert his FLSA claims. Docket No. 87 at 6. Plaintiff further contends that application of the equitable estoppel doctrine in this case would be "inconsistent with the purposes of the . . . doctrine, which seeks to prevent a party from using a contract as a sword without being bound by that same contract's terms." Docket No. 91 at 4.

As an initial matter, plaintiff's reliance on that portion of *Meister* indicating that a signatory is only required to arbitrate his or her claims against a nonsignatory if he or

she "rel[ies] on the terms of a written agreement containing an arbitration provision" ignores *Meister*'s subsequent statement that "[e]quitable estoppel is *also* available under [the] second scenario when a signatory alleges substantially interdependent and concerted misconduct by a nonsignatory and one or more signatories to the agreement." *Meister*, 353 P.3d at 921 (emphasis added). Thus, plaintiff fails to acknowledge that there are two circumstances in which the second scenario justifying equitable estoppel applies. *See Santich v. VCG Holding Corp.*, No. 17-cv-00631-RM-MEH, 2017 WL 4251944, at *10 (D. Colo. Sept. 26, 2017) (recognizing that second scenario in *Meister* contains "two subsets": (1) "when the plaintiff relies on the terms of a written agreement to assert his claims"; and (2) "when the plaintiff alleges interconnected misconduct between the signatory and nonsignatory defendants and the misconduct is intertwined with duties or obligations arising from the parties' contract"). Only the first circumstance requires that a signatory's claims rely on the terms of the parties' written agreement. The second only requires that the alleged misconduct be "intertwined" with the parties' contractual duties and obligations. *See Meister*, 353 P.3d at 921.

The Court determined that the second circumstance applied here because plaintiff predicated his theory of liability regarding Noble on allegations that Fishbone and Noble were essentially operating as one entity. *See* Docket No. 79 at 14; Docket No. 6 at 3-4, ¶ 12 (alleging that "Fishbone/Noble refused to pay overtime to Plaintiff because it classified him as an independent contractor"); *see also Meister*, 353 P.3d at 921-22 (finding "interconnected and concerted misconduct" where Meister's allegations

referred collectively to "Defendants" and did not "assign[] alleged misconduct to any defendant individually").  The Court thus concluded that plaintiff's claims against Noble were sufficiently "intertwined" with plaintiff and Fishbone's contractual relationship to justify equitable estoppel.  Docket No. 79 at 14.  Plaintiff therefore cannot show that the Court "clearly erred" in its determination.

Plaintiff's citations to non-Colorado cases do not alter this conclusion.  At the very least, defendants' references to countervailing authority demonstrate that courts disagree over the appropriate application of equitable estoppel principles to compel arbitration of claims against nonsignatories.  *See, e.g.*, *Dennis v. United Van Lines, LLC*, 2017 WL 5054709, at *4 (E.D. Mo. Nov. 1, 2017) (holding under Delaware law that allegations that defendants engaged in concerted misconduct that resulted in violations of the FLSA precluded plaintiff from avoiding arbitration of claims against nonsignatory defendant); *Bonner v. Mich. Logistics. Inc.*, 250 F. Supp. 3d 388, 397-98 (D. Ariz. 2017) (holding under Arizona law that plaintiff was equitably estopped from avoiding arbitration against nonsignatory defendant where plaintiff had attempted to hold defendants liable for FLSA violations under joint employer theory).  Indeed, the fact that the law is unsettled in this area – which plaintiff readily admits, *see* Docket No. 87 at 10 – weighs against a finding of clear error.

For these reasons, the Court concludes that it did not clearly err in compelling arbitration of plaintiff's claims against Noble.

### 3.  Request for Certification or Interlocutory Appeal

As an alternative to reconsideration, plaintiff requests that the Court either certify

the legal questions presented in this case to the Colorado Supreme Court or permit plaintiff to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  *See* Docket No. 87 at 8, 12.  Such relief is discretionary and will not be granted in every case that raises "an unsettled question of state law."  *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) (discussing certification to state supreme court); *see also Branzan Alt. Inv. Fund, LLLP v. Bank of New York Mellon Trust Co., N.A.*, 14-cv-02513-REB-MJW, 2015 WL 6859996, at *1 (D. Colo. Nov. 9, 2015) (noting that, although district courts have "discretion in determining whether to certify an order for interlocutory appeal under [§ 1292(b)], certification should be reserved for rare and extraordinary cases" (internal citations omitted)).  Plaintiff does not explain why interlocutory appeal to the Tenth Circuit would be appropriate in this case, given the fact that the disputed issues pertain primarily – if not solely – to matters of state law.   Nor would an appeal resolve the parties' dispute.  Certification is also inappropriate because (1) the legal questions are predicated on the existence of a specific set of facts, *see Branzan*, 2015 WL 6859996, at *2 (noting that certification is inappropriate "when there is merely a dispute as to how the law applies to the facts of a particular situation"); and (2) plaintiff did not raise the issue of certification until after the Court ruled in defendants' favor.  *See Armijo*, 843 F.2d at 407 (noting, as grounds for denying certification request, that the "plaintiff did not request certification until after the district court made a decision unfavorable to her").

Accordingly, plaintiff's request for reconsideration of the Court's prior order compelling arbitration of plaintiff's claims against defendants Fishbone and Noble, and

plaintiff's alternative request for certification or interlocutory appeal, will be denied.

### B. Motions to Compel Arbitration

Plaintiffs do not dispute that the Federal Arbitration Act ("FAA") governs their arbitration agreements. The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA "manifests a liberal federal policy favoring arbitration." *Comanche Indian Tribe v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)). Consequently, the Court must "resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *P & P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). "In addition, this liberal policy 'covers more than simply the substantive scope of the arbitration clause,' and 'encompasses an expectation that [arbitration] procedures will be binding.'" *Id.* (citation omitted).

However, "even in situations where both parties voluntarily agreed, at the outset of their relationship, to arbitrate any claims that might arise between them," the agreement must still allow the parties to "effectively vindicate" their statutory rights. *Nesbitt* v. *FCNH, Inc.*, 811 F.3d 371, 378 (10th Cir. 2016). Under the effective vindication exception to the FAA, the Court may invalidate an arbitration agreement if

12

the agreement operates "as a prospective waiver of a party's *right to pursue* statutory remedies." *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013) (emphasis in original) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)). While the FAA provides a presumption in favor of arbitration, "an arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum." *Shankle v. B-G Maint. Mgmt. of Colorado, Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999).

Determining whether a dispute is subject to arbitration "is similar to summary judgment practice." *Bellman v. i3Carbon*, LLC, 563 F. App'x 608, 612 (10th Cir. 2014) (unpublished) (quoting *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). The party moving to compel arbitration must present "evidence sufficient to demonstrate the existence of an enforceable agreement." *Id.* The burden then shifts to the nonmoving party "to raise a genuine dispute of material fact regarding the existence of an agreement." *Id.* If the nonmoving party seeks to invalidate an arbitration agreement, he bears the burden of showing that the arbitration agreement prevents the effective vindication of his rights. *Nesbitt*, 811 F.3d at 377-79.

### 1. Defendant Fishbone's Motion to Compel Arbitration as to Charles Young

The Court turns first to defendant Fishbone's motion to compel arbitration of the claims asserted by opt-in plaintiff Charles Young. Docket No. 73.

To meet its initial burden of showing that an enforceable arbitration agreement exists, defendant has submitted a copy of its "Mutual Agreement to Arbitrate Claims,"

which Young signed on April 17, 2012. Docket No. 73-1. Defendant also advances the same arguments that it asserted in its motion to compel arbitration as to Green – namely, that (1) Young's FLSA claims fall within the scope of his arbitration agreement; (2) Young is required to arbitrate his disputes against nonsignatory defendants Cain and Noble; and (3) Young's claims must proceed in arbitration as an individual action. Docket No. 73 at 2, 6-10.

In his three-page response, Young concedes that his claims are arbitrable under current law. *See* Docket No. 77 at 2 n.1. However, Young urges the Court to stay resolution of defendant's motion to compel pending the Supreme Court's decision in *N.L.R.B. v. Murphy Oil*, 137 S. Ct. 809 (2017) (granting petition for writ of certiorari). Young contends that, if the Supreme Court reverses the Fifth Circuit's decision in *Murphy Oil v. N.L.R.B., USA, Inc.*, 808 F.3d 1013 (5th Cir. 2015), and holds that a collective action ban in an arbitration agreement constitutes an "unfair labor practice" under the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 157, 158(a)(1), his arbitration agreement, which includes such a ban, will be unenforceable. Docket No. 77 at 1-2.

Whether or not the law is currently in flux on this issue, the Court declines to stay its ruling on defendant's motion to compel. Young has conceded that current law requires arbitration of his claims against Fishbone. *See* Docket No. 77 at 2 n.1. If courts were to stay proceedings every time there was a relevant case pending before the Supreme Court or the Tenth Circuit, litigation would often be delayed months or even years, resulting in prejudice to litigants and a significant backlog in the federal docket.

14

Having determined that a stay is inappropriate, the Court finds that Young's claims against Fishbone must proceed as an individual action in arbitration. Young's arbitration agreement states that it "cover[s] all claims Employee may have against the Company or that the Company may have against Employee," including, but not limited to "claims for unpaid or minimum wages, overtime wages, liquidated damages or other compensation or benefits due, whether claimed under the Fair Labor Standards Act ("FLSA"), the Texas Minimum Wage Act or any other federal, state or local law . . . ." Docket No. 73-1 at 3. Based on this language, the Court finds that Young's FLSA claims against Fishbone are expressly encompassed within the parties' agreement and thus subject to arbitration.

The Court further concludes that Young is barred from proceeding by way of class arbitration. In its prior order, the Court determined that the arbitration agreement signed by Green did not authorize class arbitration. Docket No. 79 at 16-17. The evidence of the parties' intent to bar class arbitration in regard to Young is even more compelling. In contrast to Green's agreement, Young's agreement contains an express waiver of the parties' rights to assert claims on a collective or class action basis. The waiver provision states:

> THE EMPLOYEE AND THE COMPANY AGREE THAT EACH MAY
> BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL
> CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY
> PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. Further,
> unless both Employee and the Company agree otherwise, the arbitrator
> may not consolidate more than one person's claims, may not authorize
> notice to potential claimants, may not authorize a collective action under
> the FLSA or any other law, may not authorize a class action and may not
> otherwise preside over any other form of a representative or class
> proceeding. If this specific provision is found to be unenforceable, then
> the entirety of this arbitration provision shall be null and void.

15

Docket No. 73-1 at 4, ¶ 5.  As noted above, plaintiff concedes that this provision is enforceable under Fifth Circuit precedent.  Docket No. 77 at 2 n.1; *see also Murphy Oil USA, Inc.*, 808 F.3d at 1015-16 (affirming prior holding that "an employer does not engage in unfair labor practices [under the NLRA] by maintaining and enforcing an arbitration agreement prohibiting employee class or collective actions and requiring employment-related claims to be resolved through individual arbitration").  Courts in the Tenth Circuit have also adopted the Fifth Circuit's rule.  *See, e.g.*, *Arnold v. Grill*, 2016 WL 10607164, at *3-4 (N.D. Okla. Nov. 2, 2016); *Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166, 1179-88 (D. Colo. 2016).[4]  In light of plaintiff's concession and existing case law, the Court finds that the collective action waiver is enforceable and that Young is required to resolve his claims against Fishbone through individual arbitration.

The Court declines, however, to compel arbitration of Young claims against Noble and Cain.  Because Young never worked for Noble, there is no basis for him to assert claims against the company.  Docket No. 73-1 at 2, ¶ 3.  The Court declines to order arbitration of nonexistent claims.  An order compelling arbitration of Young's claims against Cain would also be inappropriate, given that Cain did not join Fishbone's motion to compel.  Fishbone's request to compel arbitration of Young's claims against Noble and Cain is therefore denied.

---

[4]Although plaintiff appears to concede that Fifth Circuit law governs the arbitrability of his claims against Fishbone, it is not clear why that would be the case, given that this suit was filed in Colorado.

## 2. Defendant Cain's Motion to Compel as to Green and Young[5]

On September 11, 2017, BSC and Cain moved to compel arbitration as to Green and Young on the same grounds previously asserted by Fishbone and Noble.  Docket No. 83 at 3.

### a.  Green

Cain asserts that Green is required to resolve his claims against Cain through individual arbitration because (1) Green's claims against Fishbone/Noble and Cain are "sufficiently intertwined, such that Green is bound to arbitrate" against all defendants, and (2) Green's arbitration agreement does not authorize class arbitration.  Docket No. 83 at 4, 6.  Green responds that the arbitration agreement is unenforceable because it prevents him from effectively vindicating his rights.  Docket No. 85 at 3.  He further contends that he is not required to proceed against Cain by way of individual arbitration because Cain was not a signatory to the arbitration agreement and the plain language of the agreement permits class arbitration.  *Id.* at 7-10.

The Court finds that its prior order granting Fishbone's motion to compel, Docket No. 79, is dispositive of (1) the unenforceability of the arbitration agreement under the effective vindication exception, and (2) the availability of class arbitration.  In its order, the Court determined that the provisions of the arbitration agreement pertaining to the costs of legal representation and the one-year filing requirement – though unenforceable – were severable from the agreement.  Docket No. 79 at 7, 9, 12.  The

---

[5]This motion was filed jointly by BSC and Cain before BSC's dismissal from the lawsuit on September 12, 2017.  Docket No. 84.  Because BSC is no longer a party in this action, the Court will consider the motion only as it relates to plaintiff's claims against Cain.

Court further concluded that the arbitration agreement did not authorize class arbitration. *Id.* at 17. Because Cain moves to compel arbitration on the basis of the same arbitration agreement, these prior holdings apply.

The Court's order is also determinative of Cain's ability to compel arbitration of Green's claims. Cain was not a signatory to the arbitration agreement between Green and Fishbone. However, Green asserts liability against Cain under the theory that Cain "own[s] and operate[s] Fishbone Safety Solutions, Ltd. and, therefore, [is] jointly and severally liable for the violations alleged." Docket No. 6 at 2-3, ¶ 7. This Court previously concluded, on the basis of similar allegations treating Fishbone and Noble as a single entity, that Green's claims against Noble were sufficiently "intertwined" with his employment relationship with Fishbone for plaintiff to be equitably estopped from avoiding arbitration as to Noble, even though Noble was not a signatory to the arbitration agreement. Docket No. 79 at 14; *see also Meister*, 353 P.3d at 921 (requiring arbitration of claims against non-signatories when "a signatory alleges substantially interdependent and concerted misconduct . . . . that is intertwined with duties or obligations arising from the underlying contract" (internal citations omitted)). The same reasoning applies here. Green does not assert separate claims against Cain. Instead, Cain's liability is predicated entirely on Green's employment relationship with Fishbone and Cain's position as owner/operator of Fishbone. Under these circumstances, the Court finds that the doctrine of equitable estoppel precludes Green from avoiding arbitration as to Cain.[6]

_____

[6]Plaintiff does not assert any arguments in opposition to Cain's motion to compel that were not raised with respect to Noble. Instead, plaintiff contends that the Court

Additionally, Green's claims against Cain must proceed by way of individual arbitration. This Court previously concluded that Green's arbitration agreement with Fishbone does not authorize class arbitration. Docket No. 79 at 16-17. Because the same agreement governs the arbitrability of Green's claims against Cain, the Court's prior holding is determinative.

### b. Young

Cain also moves to compel arbitration of Young's claims on the basis of Young's arbitration agreement with Fishbone. *See* Docket No. 83 at 4-6. Cain asserts two grounds for its motion: (1) Young's agreement expressly requires arbitration of claims against Fishbone's "partners, parents and subsidiaries and affiliated companies"; and (2) Young's claims against Cain are sufficiently intertwined with his claims against Fishbone that he should be equitably estopped from pursuing his claims against Cain in court. *Id.* at 4-5.

As an initial matter, the Court notes that Young's arbitration agreement differs from Green's in two important respects. First, the arbitration agreement expressly encompasses disputes arising between Young and Fishbone's "partners, parents and subsidiaries and affiliated companies." Docket No. 73-1 at 3. Second, the agreement is presumably governed by Texas law, as Texas is both the state in which the agreement was signed and the state in which Young worked for Fishbone. Docket No. 73-1 at 2, ¶ 3; *see also* Docket No. 83 at 5 (citing Texas law); *Wood Brothers Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979) (adopting

---

erred in its prior ruling as to Noble. *See* Docket No. 85 at 7-8.

Restatement (Second) conflict of law rules for contract actions under which dispute is governed by the substantive law of the state having the "most significant relationship" to the issues).

Taking these differences into account, the Court finds that Young is required to arbitrate his claims against Cain, but for different reasons than the ones stated in the Court's prior order granting Fishbone's motion to compel Green's claims against Noble. In contrast to Colorado law, Texas law is clear that courts may not compel arbitration against non-signatories "based solely on substantially interdependent and concerted misconduct." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 188-90 (Tex. 2007). However, the Texas Supreme Court has stated that "parties to an arbitration agreement may not evade arbitration through artful pleading, such as by naming individual agents of the party to the arbitration clause and suing them in their individual capacity." *Id.* at 188; *see also Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 560 (5th Cir. 2011) (discussing Texas case law holding that "a signatory plaintiff cannot avoid its agreement to arbitrate disputes simply by bringing . . . claims against the nonsignatory officers, agents, or affiliates of the other signatory to the contract." (internal quotation marks and brackets omitted)).

Plaintiffs in this case assert that Cain is "jointly and severally liable" for Fishbone's wage violations on the basis that Cain is managing member of BSC, which is a general partner of Fishbone. Docket No. 6 at 2-3, ¶ 7; Docket No. 73-1 at 2, ¶ 2. Accordingly, Young's claims against Cain are "in substance" claims against Fishbone. *In re Merrill*, 235 S.W.3d at 190. To allow Young to litigate his claims against Cain would thus enable him to "evade arbitration through artful pleading." *Id.* at 188; *see also*

*In re Hawthorne Townhomes, L.P.*, 282 S.W.3d 131, 139 (Tex. App. 2009) (citing *In re Merrill* and holding that purchaser of home could not "avoid enforcement of the arbitration agreement by suing the signatory's general partner and its agents," where the claims against the defendants all arose out of "the design or construction of the home and the sale of the home, all of which [were] subject to arbitration").

Moreover, Young's arbitration agreement expressly applies to disputes with Fishbone's "partners, parents and subsidiaries and affiliated companies." Docket No. 73-1 at 3. In *In re Hawthorne Townhomes, L.P.*, the Texas Court of Appeals held, based on similar contract language, that the general partner of one of the signatories to an arbitration agreement was an "intended third-party beneficiary" of the agreement and thus entitled to compel arbitration. 282 S.W.3d at 139. Applying this reasoning here, BSC – and Cain, as an agent of BSC – are entitled to compel arbitration as the third-party beneficiaries of Young's agreement with Fishbone. *See id.* (holding that general partner and agents of general partner were entitled to enforce arbitration agreement under third-party beneficiary theory).

For these reasons, the Court finds that Young's claims against Cain are subject to arbitration.

### C.  Motion for Approval of *Hoffman-La Roche* Notice

Denial of a motion for conditional certification on mootness grounds is appropriate when a court has determined that all claims asserted in the action are subject to arbitration. *See Beery v. Quest Diagnostics, Inc.*, 2013 WL 3441792, at *3 (D.N.J. July 8, 2013) (holding that court lacked jurisdiction over collective action after

claims of named plaintiffs were dismissed); *Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 405-06 (S.D.N.Y. 2013) (denying motion for conditional certification as moot where "the only plaintiff to opt-in to [the] lawsuit . . . [had] agreed to arbitrate her FLSA claims, and ha[d] waived the right to bring a collective action with regard to those claims"); *cf. Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73-75, 78-79 (2013) (holding that FLSA collective action became moot when named plaintiff's individual claim became moot prior to conditional certification "because [plaintiff] lacked any personal interest in representing others in [the] action"). Given the Court's resolution of defendants' motions to compel, all the claims asserted in this action are subject to arbitration. Plaintiff's motion for conditional certification, Docket No. 62, is therefore moot.

## III.  ADMINISTRATIVE CLOSURE

Following the Court's order on defendants Fishbone and Noble's motion to compel arbitration as to Green, Noble filed an Unopposed Motion to Stay Litigation Pending an Arbitration Determination and Resolution [Docket No. 82].  It is standard practice in this district for courts to administratively close, rather than stay, cases pending resolution of the parties' claims in arbitration.  *See, e.g.*, *Cochlear Ltd. v. Oticon Med. AB*, No. 16-cv-01700-PAB-KMT, 2017 WL 4251927, at *4 (D. Colo. Sept. 25, 2017) (denying motion to stay but administratively closing case pending resolution of claims through arbitration); *see also Quinn v. CGR*, 828 F.2d 1463, 1465 & n.2 (10th Cir. 1987) (describing administrative closure as "the practical equivalent of a stay").  Accordingly, defendant's motion to stay will be denied and this case will be

administratively closed, subject to reopening for good cause, pursuant to

D.C.COLO.LCivR 41.2.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff's Motion to Reconsider, or to Certify to the Colorado

Supreme Court, or to Certify for Interlocutory Appeal [Docket No. 87] is **DENIED**.  It is

further

**ORDERED** that Defendant Fishbone Safety Solutions, Ltd.'s Motion to Compel

Arbitration as to Charles Young [Docket No. 73] is **GRANTED** in part and **DENIED** in

part.  It is further

**ORDERED** that Defendants William S. Cain and BSC Interest, LLC's Conditional

Motion to Compel Arbitration as to Michael Green and Charles Young [Docket No. 83]

is **GRANTED**.  It is further

**ORDERED** that Plaintiff's Motion for Approval of *Hoffman-La Roche* Notice

[Docket No. 62] is **DENIED AS MOOT**.  It is further

**ORDERED** that Defendant Noble Energy, Inc.'s Unopposed Motion to Stay

Litigation Pending an Arbitration Determination and Resolution [Docket No. 82] is

**DENIED**.  It is further

**ORDERED** that this case shall be administratively closed, subject to reopening

by any party upon a showing of good cause, pursuant to D.C.COLO.LCivR 41.2.  It is

further

**ORDERED** that, not later than twenty days after the completion of the arbitration

proceeding, the parties shall file a status report advising the Court whether they believe the case should be reopened for good cause for any further proceedings in this Court or whether the case may be dismissed.

DATED March 19, 2018.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge